**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **KEN LAVERGNE** | **CASE NO. 2:26-CV-01043** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **AT&T INC ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## REPORT AND RECOMMENDATION

Before the Court is the AT&T DEFENDANTS' RULE 12(B)(6) & 12(B)(1) MOTION TO DISMISS. [Doc. 8]. *Pro se* plaintiff Ken Lavergne opposed the motion [Doc. 10], and Defendants replied [Doc. 12]. Considering the record in this case, and for the reasons explained below, this Court recommends that the instant motion be GRANTED and that Lavergne's claims be DISMISSED WITH PREJUDICE for failing to state a claim upon which relief may be granted.

## Factual Background

Lavergne alleges that, on February 27, 2026, he visited an AT&T store in Lake Charles, Louisiana, to modify his phone plan. [Doc. 1 at p. 3 ¶¶9-10]. After modifying his phone plan, Lavergne left the store and got in his car in the store's parking lot. [*Id.* at p. 4 ¶11]. Lavergne was sitting in his car making phone calls when two police officers approached him. [*Id.* at p. 4 ¶12]. The police officers questioned Lavergne, and Lavergne told them he was making phone calls. [*Id.* at p. 4 ¶13]. The officers apologized for the inconvenience and thanked Lavergne for talking to them. [*Id.* at p. 4 ¶14]. Lavergne then left the parking lot voluntarily. [*Id.* at p. 6 ¶21]. Lavergne alleges that the manager of AT&T caused the police to approach him by making a false report about him. [*Id.* at p. 5 ¶16]. Lavergne then issued a written complaint to AT&T's Office of the President. [*Id.*]. On April 1, 2026, Lavergne filed suit in the Western District of Louisiana against AT&T, asserting civil rights claims, 14th

Amendment Due Process claims, Equal Protection Clause claims, 1st Amendment claims, conspiracy claims, Federal Trade Commission Act claims, Communications Act claims, intentional infliction of emotional distress claims, and negligence claims. [Doc. 1]. Lavergne alleges that he suffered emotional distress, loss of peace and security, reputational harm, and psychological trauma associated with unjustified police confrontation for which he seeks compensatory damages, punitive damages, statutory damages, injunctive relief, and declaratory relief. [*Id.* at ¶21-23].

On May 18, 2026, Defendants filed the instant motion, seeking dismissal of Lavergne's claims. [Doc. 8]. Lavergne opposed the motion [Doc. 10], and Defendants replied [Doc. 12].

**Law & Analysis**

*A. Standing*

Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. *See* U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). The justiciability doctrines of standing, mootness, political question, and ripeness "all originate in Article III's 'case' or 'controversy' language." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark v. Hardee LP v. City of Austin*, 522 F.3d 533, 541-42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Standing is a required element of subject matter jurisdiction and is therefore properly challenged on Rule 12(b)(1) motion to dismiss. *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 415 (N.D. Tex. 2013) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).

Standing requires that: (1) an injury be concrete and particularized, actual or imminent, not conjectural or hypothetical, (2) the injury be fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012)." *Breaker v. United States*, 977 F. Supp. 2d 921, 931.

A "concrete" injury must be "de facto," which means that it must actually exist, but a "concrete" injury is not necessarily tangible, and extensive jurisprudence establishes that certain intangible injuries are nevertheless "concrete." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Here, Lavergne alleges that he suffered emotional distress, loss of peace and security, reputational harm, psychological trauma associated with unjustified police confrontation, and he seeks compensatory damages, punitive damages, statutory damages, injunctive relief, and declaratory relief. [*Id.* at ¶21-23]. Allegations of emotional injuries do not always satisfy the requirement of an actual, concrete, and particularized injury to establish Article III standing. *Bednyak v. Fin. Risk Mitigation, Inc.*, 739 F. Supp. 3d 353, 370 (E.D. La. 2024) (citing *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021)). However, given that this case is in its infancy, the Court assumes that Lavergne's alleged emotional injuries would suffice to satisfy the injury in fact component of Article III standing. *See id.*

Because a favorable outcome would likely redress Lavergne's injuries, and the injuries are fairly traceable to the allegation of Defendants' store manager calling the police on Lavergne, the undersigned finds that Article III standing may be satisfied. Therefore, the Court proceeds to analyze Defendants' Rule 12(b)(6) motion based on the asserted emotional injuries (emotional distress, psychological trauma), which are the only injuries for which Article III standing could possibly exist.

*B. Failure to State a Claim*

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. The Court does not accept conclusory allegations, unwarranted factual inferences, or legal conclusions that are not supported by factual allegations in its determination of facial plausibility. *Id.*

1. *Civil and Constitutional Rights Violation Claims*

Lavergne asserts that his suit is "a civil rights action arising from Defendants' pattern of conduct that deprived Plaintiff of fundamental rights," and cites 28 U.S.C. § 1343, 42 U.S.C. §§ 1983, 1985, and 47 U.S.C. § 207. [Doc. 1].

In order to plausibly plead a claim under 42 USC § 1983, a plaintiff must show that a defendant (1) deprived the plaintiff of constitutional rights, and (2) acted under color of state law. *Filarsky v. Delia*, 566 U.S. 377, 383, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012). "Private individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (quotations and internal citations omitted). It is well established that a private person or entity does not act under state law by merely eliciting but not joining in an exercise of state authority. *Id.* (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988)). In other words, merely calling the police on someone does not establish that a private person acted under state law. *Id.* Lavergne alleges that the manager of the AT&T store merely reported his presence to the police and caused the police to question him. [Doc. 1 at p. 5 ¶16]. Accordingly, the undersigned finds that Lavergne has failed to plead a claim under § 1983 pursuant to the jurisdiction provided by § 1343.

Underlying Lavergne's claims is the idea that he had the right to be free from the police approaching his vehicle and briefly questioning him, and that that right was violated. Under the Fourth Amendment, a person has a right to be free from unreasonable seizure. U.S. Const. Amend. IV. In order to prove that the Fourth Amendment right to be free from unreasonable seizure has been violated, one must first prove that a seizure occurred, and

"[n]ot every encounter between police officers and citizens amounts to a seizure requiring constitutional justification." *Lewis v. State*, 915 S.W.2d 51, 53. Nothing in the Constitution prevents a law enforcement officer from approaching someone on the street or in a public place and addressing questions to that person if he is willing to listen. *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229, 236 (1983) (citing *Terry v. Ohio*, 392 U.S. 1, 34, 88 S. Ct. 1868, 1886, 20 L. Ed. 2d 889, 913 (1968) (White, J., concurring); *id.* at 31, 32-33 (Harlan, J., concurring); *Dunaway* v. *New York*, 442 U.S. 200, 210, n. 12 (1979)). A brief police-citizen "encounter is 'consensual' so long as the civilian would feel free to either terminate the encounter or disregard the questioning." *United States v. Wise*, 877 F.3d 209, 219 (5th Cir. 2017) (citation omitted). No Fourth Amendment detention occurs where a police officer merely approaches a person in a public place and asks questions, and the person remains free to leave. *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). Lavergne does not allege that he was not free to leave.

Rather, Lavergne alleges that, after visiting the AT&T store to modify his phone plan, he left the store and got in his car in the store's parking lot. [Doc. 1 at p. 3-4 ¶¶9-11]. Lavergne was sitting in his car making phone calls when two police officers approached him. [*Id.* at p. 4 ¶12]. The police officers questioned Lavergne about why he was in the parking lot, and Lavergne told them he was making phone calls. [*Id.* at p. 4 ¶13]. The officers acknowledged the interaction, apologized to Lavergne for the inconvenience, thanked Lavergne for talking to them, and allowed Lavergne to remain in the parking lot without telling him to leave. [*Id.* at p. 4 ¶14]. Lavergne then left the parking lot voluntarily. [*Id.* at p. 6 ¶21]. Lavergne alleges that the manager of AT&T caused the police to approach him by making a false report about him. [*Id.* at p. 5 ¶16].

When taken as true, Lavergne's allegations do not appear to suggest that his brief encounter with the officers that day was anything more than a consensual, and seemingly polite, conversation in which Lavergne could have declined to engage. In fact, if, as Laverne alleges, his presence in the parking lot was a subject of concern, and he left the parking lot on his own accord [Doc. 1 at p. 4 ¶14, p. 6 ¶21], it appears that he was not only free to leave but was encouraged to leave. Accordingly, the undersigned finds that no seizure occurred, and, thus, none of Lavergne's constitutional rights were violated by this brief interaction with police.

Furthermore, Lavergne's constitutional rights were not violated by AT&T or its manager by a false report to the police. An individual has no constitutional right to be free from another private person calling the police on him for any reason. Moreover, "the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982). In other words, neither AT&T nor its employees can be sued for having violated the 14th Amendment or the constitutional provisions made applicable to state governments through it, as the 14th Amendment applies to states and state actors, not to private persons or entities. AT&T and its employees are private actors.

Because Lavergne has failed to plead facts to plausibly state a claim for the violation of any of his constitutional rights, it follows that there could have been no conspiracy in which Defendants engaged to commit, cause, or fail to prevent violation of such rights.

Accordingly, the undersigned recommends dismissal of Lavergne's claims brought pursuant to 28 U.S.C. § 1343; 42 U.S.C. §§ 1983, 1985, 1986; 47 U.S.C. § 207; the 14th Amendment; and the 1st Amendment.

2. *Federal Trade Commission Act (FTCA)*

Lavergne asserts violations of the Federal Trade Commission Act, cites 15 U.S.C. § 45, and states that "Defendants engaged in unfair and abusive practices impacting consumer safety and well-being." [Doc. 1 at p. 9 ¶15]. The Fifth Circuit has held that "there is no private cause of action for violation of the FTC Act," a holding with which, the court noted, other circuits agree. *Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831, 835 (5th Cir. 2021). Accordingly, the undersigned recommends dismissal of Lavergne's claims brought pursuant to the FTCA.

*3. 47 U.S.C. §§ 201, 202*

Lavergne asserts Communications Act violations, cites 47 U.S.C. §§ 201, 202, and states that "Defendants' conduct constituted unjust, unreasonable, and discriminatory practices." [Doc. 1 at p. 9 ¶16]. 47 U.S.C. § 201 establishes the duties of common carriers engaged in interstate communication by wire or radio. 47 U.S.C. § 202 prohibits common carriers from "unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services" and from giving "undue or unreasonable preference or advantage" to anyone. These provisions of law apply to communications providers in their roles as common carriers. The facts alleged by Lavergne do not implicate AT&T in its role as a common carrier. Lavergne makes no allegations related to AT&T's provision of communications services. Rather, Lavergne's allegations relate, at most, to the duties that a particular AT&T storefront may or may not owe to a person sitting in its parking lot. Therefore, the undersigned recommends dismissal of Lavergne's claims brought pursuant to 47 U.S.C. §§ 201, 202.

*4. State Law Causes of Action*

Federal courts possess subject matter jurisdiction only over civil actions presenting a federal question and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and in which the parties are citizens of different states. 28 U.S.C. §§ 1331,

1332. Here, Lavergne appears to be attempting to assert tort claims, which are governed by state law, and over which Lavergne has invoked this Court's diversity jurisdiction. Because Lavergne is a citizen of Louisiana suing Delaware companies for an amount in controversy in excess of $75,000.00, the requirements for diversity jurisdiction are satisfied.

Where, as here, a suit is brought in federal district court on the basis of diversity jurisdiction, the court applies substantive state law in the adjudication of state law claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed. App'x 451, 453 (5th Cir. 2011). In the instant suit, Lavergne's claims are made pursuant to Louisiana tort law.

*a. Intentional Infliction of Emotional Distress*

In his Complaint, Lavergne asserts a claim for intentional infliction of emotional distress, stating that Defendants' "[c]onduct was extreme, outrageous, and intentional." [Doc. 1 at p. 10 ¶17]. This conclusory statement is disregarded by the Court in the instant analysis, as it is a legal conclusion, not a factual allegation. Therefore, the undersigned finds that Lavergne has failed to state a claim for intentional infliction of emotional distress upon which relief can be granted.

*b. Negligence and Gross Negligence*

In his Complaint, Lavergne asserts claims for negligence and gross negligence, stating that "Defendants breached duties to ensure safe and non-harmful use of their infrastructure." [Doc. 1 at p. 10 ¶18]. The allegations suggest that Lavergne may have been inconvenienced and frustrated by his brief interaction with the police officers, but they do not suggest that he was endangered or harmed in any way by his use of the parking lot or otherwise by AT&T's "infrastructure" or property. Lavergne also asserts claims for negligent supervision and training [Doc. 1 at p. 6 ¶23], but he does not assert any facts in support of this claim, other than to state in a conclusory manner that "[t]his incident reflects not merely an isolated lapse,

but a failure of corporate governance, training, and accountability, allowing employees to weaponize law enforcement against customers." [*Id.* at p. 7 ¶24]. This statement is disregarded by the Court in the instant analysis, as it is a legal conclusion, not a factual allegation. Therefore, the undersigned finds that Lavergne has failed to state a claim for negligence or gross negligence upon which relief can be granted.

*C. Leave to Amend*

In his opposition to the instant motion to dismiss, Lavergne requested leave to amend should the Court grant dismissal. [Doc. 10 at p. 10]. Although courts generally permit a *pro se* litigant to amend a complaint, amendment is not warranted where it appears that the litigant has stated his "best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). For the reasons stated above, the undersigned recommends dismissal without leave to amend, as Lavergne has stated his best case regarding the claims at issue.

## **Conclusion**

For the reasons discussed herein, this Court recommends that AT&T DEFENDANTS' RULE 12(B)(6) & 12(B)(1) MOTION TO DISMISS [Doc. 8] be granted, that all claims by Plaintiff Ken Lavergne, acting *pro se* herein, be DISMISSED WITH PREJUDICE, and that leave to amend be denied as futile.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following

the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

THUS DONE in Chambers, Lafayette, Louisiana on this 6th day of October, 2026.

**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**